IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| RAFAEL SUAREZ, DAISY GONZALEZ, and RICHARD BYRD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | Case No.: 3:21-cv-00393<br><br>**Hon. William L. Campbell, Jr.**<br><br>**CLASS ACTION** |

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND ENTRY OF FINAL ORDER AND JUDGMENT

Plaintiffs Rafael Suarez, Daisy Gonzalez, and Richard Byrd (hereinafter, "Plaintiffs") respectfully submit this reply brief in further support of the parties' Joint Motion for Final Approval of Settlement and Entry of Final Order and Judgment ("Final Approval") (ECF No. 33).

The Settlement in this case provides excellent relief to Class Members, including: reimbursements for past headlamp replacements; an opportunity for all Class Vehicles to receive free replacement headlamps, regardless of the age or mileage of the vehicle; and a six-year extended warranty covering headlamp delamination. The Notice program was broad, including over 3.2 million direct mail notices to date, nationwide publication, digital advertising, a PR Newswire press release, and the Settlement website. In addition, the Settlement garnered significant media attention, and Lead Class Counsel have communicated directly with over 3,700 Class Members.

While the deadline to submit claims for reimbursements is not until April 25, 2022, over 6,700 putative Class Members have already submitted reimbursement claims, with a face value of nearly $5.5 million. *See* Supplemental Declaration of Lana Lucchesi Re: Notice Procedures, filed contemporaneously herewith ("Supp. Lucchesi Decl."), at ¶¶ 22-23.

Out of over 3.2 million Class Members, only one submitted an objection to the Settlement and that objection has now been withdrawn.[1] That is remarkable in a Class of this size, and it reflects the strength and overall fairness of the Settlement. The Settlement should be finally approved, so that eligible Class Members can begin to receive free replacement headlamps and reimbursements.

The parties also request that the Court approve an amendment to the Class Definition set forth at paragraph 69 of the Settlement. As set forth below, an error in an internal Nissan North America, Inc. ("NNA") reference document caused an inadvertent error in identifying certain trim levels that were manufactured with LED or Xenon headlamps, which are excluded from the Class definition set forth in paragraph 69. The parties have executed an Amendment to the Settlement, attached hereto as Exhibit C, correcting the error. Further, KCC will send the Mailed Notice to all current and former owners and lessees of an additional 283,661 Vehicle Identification Numbers ("VINs") that NNA has now identified as Class Vehicles. For the reasons discussed below, the parties do not believe that the error necessitates any extension of deadlines or delay in granting Final Approval or implementing the Settlement because the requirements of Rule 23 and due process have been met, notwithstanding the error. Thus, the

---

[1] The withdrawal of that objection is subject to Court approval pursuant to Rule 23(e)(5)(B)(i).

parties respectfully request that the Court grant final approval of the Settlement and enter the Proposed Final Judgment in the form submitted herewith.[2]

## I. THE SETTLEMENT CLASS MEMBERS' REACTION TO THE SETTLEMENT TO DATE SUPPORTS FINAL APPROVAL

Out of over 3.2 million Class Members, only one objected to the settlement, and that objection has now been withdrawn.[3] The fact that there are no pending objections to the Settlement, combined with the significant number of claims already received, demonstrates that the Settlement at issue here is abundantly fair. *See, e.g. In re Regions Morgan Keegan Secs,* 2013 U.S. Dist. LEXIS 205822, at *18 (W.D. Tenn. Sep. 5, 2013) ("The absence of timely [ ] objections to the Settlement favors approval."). Indeed, it is rare for a class action settlement of this size to have no pending objections. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305 (3d Cir. 2005) ("a low level of objection is a 'rare phenomenon'"); *In re Nasdaq Market-Makers Antitrust Lit.,* 187 F.R.D. 465, 478 (S.D.N.Y. 1998) ("In litigation involving a large class, it would be extremely unusual not to encounter objections.").

### 1. Whitaker Objection

Ms. Whitaker's objection relates to the cut-off date for reimbursement claims. *See* Ex. A.

Under the Settlement, Class Members are entitled to claim reimbursement for replacement costs that they incurred at any time prior to the Notice Date, October 25, 2021. After the Notice Date, Class Members who are already outside the six-year extended warranty must wait for the Settlement to become Effective to receive free replacements from an NNA dealer. There are several reasons for this. It allows greater oversight over the administration of Settlement benefits, serves a cost saving function, and serves a fraud prevention function.

---

[2] Because of the NNA error, the Proposed Final Judgement submitted herewith varies slightly from the one previously submitted in that it corrects the Class definition.
[3] In addition, only 13 Class Members opted out. *See* Supp. Lucchesi Decl., at Ex. H.

Ms. Whitaker owns a 2015 Altima purchased on August 22, 2014. Thus, she is currently outside of the six-year extended warranty period. She states that her driver's side headlamp had become dim, and, without knowing about the Settlement, she paid for a replacement at her local NNA dealer on October 27, 2021. On October 29, 2021, two days later, she received the Mailed Notice of the Settlement, which had been sent on October 25, 2021. She objected to the Settlement because, had she received the notice sooner, she says would have deferred the replacement until after the Effective Date.

While the timing of her repair was unfortunate, her objection actually highlights one of the major strengths of the Settlement. In many, if not most, class action settlements involving alleged vehicle defects, manufacturers provide an extended warranty and reimbursements for repairs that occur within the extended warranty, but they do not provide free repairs for Class Members who are already outside that warranty extension. *See e.g., Yaeger v. Subaru of Am., Inc.*, 2016 U.S. Dist. LEXIS 117193, at *27 (D.N.J. Aug. 31, 2016) (settlement provided for current owners to obtain free oil consumption testing and TSB repairs during an extended warranty period); *Berman v. GM Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 200947, at *6 (S.D. Fla. Nov. 15, 2019) (class members were entitled to free replacement of piston assemblies at authorized dealerships, subject to an oil consumption diagnosis and their vehicle being within time and mileage limitations); *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 133572 (C.D. Cal. Oct. 17, 2011) (providing limited warranty extension for defective headlights for 5 years or 50,000 miles and reimbursement for out-of-pocket expenses incurred before the notice date). Here, if NNA had simply provided a six-year extended warranty and reimbursements for Class Members who replaced within that period, the Settlement likely would have been found fair, and Class Members, like Ms. Whitaker, who utilized their vehicle for more

4

than six years without replacing the headlamps would be entitled to nothing. However, Class Counsel negotiated a settlement that affords *all* Class Vehicle owners the opportunity to receive free replacements regardless of age or mileage of their vehicle. A condition of that benefit, however, is that Class Members who are outside the six-year period and who did not already replace their headlamps prior to October 25, 2021, must wait for the Settlement to become Effective, for the reasons stated above.

Thus, Ms. Whittaker's objection does not merit denial of final approval. "It is well settled … that objections based purely upon individual claims of loss do not warrant disapproval of the proposed settlement." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) (internal quotations omitted). "The Court's role in assessing the fairness of a settlement is not to make a *de novo* evaluation of whether the measures applied to all claimants provide each individual with a satisfactory recovery." *Id.* "Rather, the criteria or methodology employed by the litigants is sufficient if its terms, when applied to the entire group of individuals represented, appear reasonable." *Id.*

The reimbursement cutoff date is fair, reasonable, and has a rational basis. Therefore, Ms. Whitaker's objection should be overruled. Nevertheless, NNA has agreed to reimburse Ms. Whitaker for her October 27, 2021 headlamp replacement, and Ms. Whitaker has withdrawn her objection, subject to Court approval. *See* Ex. B. Pursuant to Rule 23(e)(5)(B)(i), the parties respectfully request that the Court approve the withdrawal of her objection.

### 2. Melgoza Letter

Class Counsel also received a letter from Ms. Nancy Melgoza. *See* Ex. C. In her letter, Ms. Melgoza "object[s]" to her headlamps, which she says are malfunctioning. She does not object to any aspect of the Settlement. Lead Class Counsel spoke with Ms. Melgoza on

5

Case 3:21-cv-00393    Document 38    Filed 12/06/21    Page 5 of 17 PageID #: 571

November 30, 2021 to ensure that she understands her right to obtain free replacement headlamps under the Settlement if her current headlamps are delaminated. She did not express any objection to the Settlement terms on that call. Nevertheless, as her letter refers to "objecting," Class Counsel provide a copy for the Court's consideration. The parties request that the Court overrule Ms. Melgoza's "objection" to the Settlement, to the extent it can be considered one at all.

## II. THE AMENDMENT TO THE SETTLEMENT AND ADDITIONAL NOTICE

The parties recently discovered that, due to an error in internal NNA reference material consulted during the process of creating the comprehensive list of vehicles included in the Settlement Class, the Class definition in the Settlement Agreement requires clarification and, relatedly, certain VIN numbers were inadvertently excluded from the direct mail notice program. The parties have therefore agreed to clarify the Class definition in the Settlement, subject to the Court's approval, and send the direct mail notice to the additional Class Members who can be identified as current or former owners or lessees of those additional VINs. The parties do not believe this error necessitates any extension of deadlines or delay in conducting the Final Hearing or entry of a final judgment, for the reasons discussed below.

### A. Description of the Error

The Settlement Class includes all 2013-2018 Nissan Altimas *manufactured with halogen headlamps*. Importantly, the notices disseminated by the Settlement Administrator—including the Mailed Notice, Summary Notice, PR newswire Press Release, Full Notice, and Settlement Website—state that the Class includes all "current or former owners or lessees of 2013-2018 Nissan Altimas manufactured with halogen headlamps." *See* Supp. Lucchesi Decl., at Exhibits C-G. The Settlement Administrator, KCC, sent direct mail notice to over 3.2 million addresses

6

Case 3:21-cv-00393   Document 38   Filed 12/06/21   Page 6 of 17 PageID #: 572

associated with over 1.43 million Vehicle Identification Numbers ("VINs") identified as Class Vehicles by NNA. *See id*. at ¶ 12; *id.* at Ex. A.

Although the disseminated notices simply refer to Altimas "manufactured with halogen headlamps," paragraph 69 of the Settlement (which is also incorporated in the class definition preliminarily approved by the Court (ECF No. 29, ¶ 4)), both defines the Class to include Altimas manufactured with halogen headlamps and also lists certain trim levels that were manufactured with LED or Xenon headlamps, which are excluded. The same list of excluded trims was set forth in FAQ 6 ("How do I know if my Altima was manufactured with halogen headlamps?") in the Full Notice, which is available by request and on the Settlement Website.

As an outgrowth of a communication between Class Counsel and a Class Member in November, the parties discovered that an error in an internal NNA reference document, which was consulted in creating the list of VINs included in the Settlement Class, caused an inadvertent error in overly restricting the Class Vehicle VIN list and list of excluded trims. The discrepancy was related to certain plant-level manufacturing changes that were not fully reflected in the data used to create the list of excluded trims.

In order to correct the error, the parties have executed an amendment to paragraph 69 of the Settlement, and NNA has provided approximately 283,000 additional VINs to KCC, who is currently preparing to send direct mail notices to all associated addresses that can be obtained from state motor vehicle registration records.

The amendment changes paragraph 69 of the Settlement as follows.

**"Settlement Class Vehicles"** means all model year 2013–2018 Nissan Altimas, except the following excluded vehicles:

| Model Years | Trim | Package/Edition (if applicable) |
|---|---|---|
| 2013-~~2018~~2015 | 3.5L SL | |
| 2017 | 3.5L <u>SL</u> | |
| <u>2016-2018</u> | 3.5L <u>SL</u> | <u>with Tech package</u> |
| <u>2016</u>-2017 | 3.5L SR | |
| 2016-2017 | 2.5L SR | with LED Appearance package |
| 2016-2018 | 2.5L ~~SR~~ <u>SL</u> | with Tech package |
| 2017 | 2.5L SR | Midnight Edition |

For clarity, the Settlement Class Vehicles include all 2013-2018 Altimas manufactured with halogen headlamps, and excludes 2013-2018 Altimas manufactured with Xenon or LED headlamps.

*See* Ex. D. The parties also instructed KCC to edit FAQ 6 consistently, and this edit was made prior to the filing of this submission. No edits are necessary to the Mailed Notice, Summary Notice, Digital Ad Notices, or PR Press Release, all of which simply refer to the Class Vehicles as all 2013-2018 Altimas "manufactured with halogen headlamps."

NNA provided KCC with the additional VINs on November 22, 2021, and KCC is in the process of obtaining associated address information from state motor vehicle records. *See* Supp. Lucchesi Decl., at ¶ 11. Barring unforeseen circumstances, KCC anticipates it will complete this supplemental mailing by January 20, 2022, which is on or before the earliest possible Effective Date of the Settlement. *Id.*

### B. Rule 23(c)(2) and Due Process Have Been Satisfied

Notwithstanding the error, the parties agree that Rule 23(c)(2) and due process have been satisfied by the extensive notice that has already occurred and, therefore, no extension of the objection or opt out deadline is required.

The notice program here was very broad. It included: (1) direct mail to 3,249,364 Class Members; (2) nationwide publication in People magazine; (3) a digital media campaign with

8

over 5 million ads, (4) a PR Newswire press release, (5) the Settlement Website, and (6) publication on Lead Class Counsel's website. In addition, the Settlement garnered significant media coverage and has been discussed on several consumer forums and social media. *See* Supplemental Declaration of Timothy N. Mathews in Further Support of the Parties' Joint Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Service Awards ("Supp. Mathews Decl."), filed contemporaneously herewith, at ¶¶ 5-6. Lead Class Counsel have also directly communicated with over 3,700 Class Members.

Due process and the Federal Rules require that absent class members be provided with "the best notice that is practicable under the circumstances" so that they have an opportunity to object and opt out. Fed. R. Civ. P. 23(c)(2)(B).

Individual notice is required to be sent "to all members who can be identified through reasonable effort." *Id*. Reasonable effort does not mean perfect, however. "Due process when viewed through the lens of objectivity does not require perfection." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997). Further, "[w]hile the *plan for giving notice to the entire class* must be legally and constitutionally sufficient, there is no requirement that any particular class member receive 'individually sufficient notice.'" *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 2007 U.S. Dist. LEXIS 35431, at *17 (N.D. Ohio May 15, 2007) (emphasis in original).

Where, as here, an error occurs in providing individual notice, courts have held that Rule 23(c)(2) and due process are nevertheless satisfied where the notice program includes other forms of notice, such as publication. For example, in *Friedman v. 24 Hour Fitness USA, Inc.*, 2010 U.S. Dist. LEXIS 143816, at *10-13 (C.D. Cal. July 12, 2010), the court held that Rule

9

23(c)(3) and due process were satisfied notwithstanding a notice error that resulted in approximately 12,500 identifiable class members not being sent a direct mail notice, where notice was also published in People magazine and online. *See also, e.g., Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (holding that notice satisfied due process and Rule 23(b)(2) notwithstanding that some class members received late direct notice); *Trist v. First Fed. Sav. & Loan Asso.*, 89 F.R.D. 1, 3 (E.D. Pa. 1980) (approving notice procedure despite the fact that some class members were never sent a notice due to a clerical error).

"[T]he lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide; *see also, e.g., Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 287 (7th Cir. 2017) (approving notice plan that reached "approximately 70%" of millions of class members). Here, direct mail notice was timely sent to all addresses associated with over 83 percent of the Class Vehicles.

"[S]upplemental publication notice provides sufficient and adequate notice to those class members who, though known, could not be reached individually." *Hall v. Best Buy Co.*, 274 F.R.D. 154, 168 (E.D. Pa. 2011). Indeed, class action settlements are regularly approved in cases where direct notice is not feasible or where the parties can only identify a portion of the class for direct notice. *See, e.g., Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 307 F.R.D. 351, 385 (E.D. Pa. 2015) (finding publication notice program sufficient to supplement direct notice that would not reach all class members); *Clemans v. New Werner Co.*, 2013 U.S. Dist. LEXIS 104488, *14 (W.D. Wash. July 25, 2013) (approving notice program involving mailed and publication notice where parties had addresses for only some class members).

Plaintiffs submit that the requirements of Rule 23 and due process have been met here, notwithstanding the error that will result in direct mail notices being sent to some Class Members after the objection and exclusion deadlines. *See, e.g. Frost v. Household Realty Corp.,* 2004 U.S. Dist. LEXIS 32397, at *12-14 (S.D. Ohio Nov. 10, 2004) ("The fact that Plaintiffs did not receive actual notice of the settlement agreement, which included the requirements for excluding themselves from the class, does not dictate that the notice was insufficient or in violation of their due process rights."); *McKinstry-Austin v. JPMorgan Chase Bank, N.A.*, 2015 U.S. Dist. LEXIS 126378, at *11-12 (E.D. Mich. Sep. 22, 2015) (citing *Frost*, 61 F. Supp. 3d at 745-46). The Mailed Notice was timely sent to the vast majority of Class Members, and the Mailed Notice was supplemented by publication in People magazine, significant digital advertising, and the PR newswire press release, plus the substantial media coverage and consumer interest garnered by the Settlement. Moreover, all these notices made clear that the Settlement Class includes *all* '13-'18 Altimas manufactured with halogen headlamps.

In fact, at least 163 Class Members who own[ed] or lease[d] the vehicles that were mistakenly excluded from the direct mailing have *already* submitted reimbursement claims, demonstrating that the broad notice program was effective to get notice to the entire Class of owners and lessees of Altima "manufactured with halogen headlamps," even though some Direct Mail notices will be sent late. *See* Supp. Lucchesi Decl., at ¶ 23.

Thus, the parties respectfully submit that the requirements of Rule 23(c)(2)(B) and due process have been satisfied, notwithstanding the error.

### C. Additional Factors Weigh Heavily in Favor of Not Delaying Final Approval

Further, there are at least three important reasons why Class Counsel believe the best interests of the Class are best served by not delaying final approval of the Settlement.

### 1. There Are No Objections to the Settlement

First, as discussed *supra*, the lack of objections demonstrates that this Settlement is exceptionally fair to Class Members. As many courts have recognized, an important consideration in evaluating the sufficiency of notice is "not whether some individual [class members] got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 513-14 (*quoting Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

Here, direct mail notice was sent to over 3.2 million Class Members, in addition to the other forms of notice disseminated to all Class Members. There has been ample opportunity to flush out any possible objections to the Settlement, but the parties received just a single objection to the Settlement, which has now been withdrawn. The lack of objections is a very clear reflection of the strength and overall fairness of this Settlement and weighs heavily in favor of the conclusion that Final Approval should not be delayed as a result of the notice error.

### 2. Class Members Cannot Receive Free Replacement Headlamps Until After the Effective Date

Second, it would be unfair to delay providing the Settlement relief to Class Members as a result of NNA's error. Under the Settlement, every Class Vehicle with dim, delaminated headlamps is eligible for free replacement headlamps from an NNA dealer, but not until the Settlement receives final approval and the Effective Date occurs.[4] Many Class Members have contacted Lead Class Counsel expressing their desire to obtain free replacements as soon as possible due to perceived safety concerns.

---

[4] Class Members who are currently within the extended six-year warranty period can pay for replacements now and seek reimbursement, but no free replacements will occur until after the Effective Date.

Particularly given that there are no pending objections to the Settlement, it would be unfair and unjust to delay access to the benefits of the Settlement. *See Friedman*, 2010 U.S. Dist. LEXIS 143816, at *11 ("the Court finds that it would be unfair to delay final approval of the settlement and receipt of the benefits provided by the settlement to approximately 1.8 million unaffected class memberships, in order to provide the approximately 12,500 class memberships (i.e., approximately 0.7% of the class) affected by the computer glitch with additional direct notice and an opportunity to opt and or object"). Delaying Final Approval will not result in any benefit to Class Members; it would only delay their ability to benefit from the Settlement.

### 3. Class Members to Whom the Supplemental Notices Will Be Sent Will Have Ample Time to Claim the Benefits of the Settlement

Third, there is ample time for all Class Members to take advantage of the full benefits of the Settlement even after the additional notices will be sent. As noted, KCC expects to mail the additional notices by January 20, 2022. The deadline for reimbursement claims under the Settlement is 95 days later, April 25, 2022. Thus, a Class Member who receives the supplemental notice will still have more than three months to submit a reimbursement claim, which is a very simple process that can be competed online or through the mail.

Further, all Class Members will have a full opportunity to receive free replacement headlamps after the Effective Date. The earliest possible Effective Date of the Settlement is January 20, 2022, and the supplemental notice will be mailed on or before then. Class Members who are within the six-year extended warranty period can simply go to an NNA dealer after the Effective Date to receive free replacements. For those who are outside the six-year extended warranty, KCC will mail the Out-of-Warranty Notice and Claim form within five days of the Effective Date. In other words, the additional Mailed Notice will not prejudice any Class Member's ability to benefit from the Settlement.

### D. The Court Should Approve the Settlement Amendment

Finally, because the amendment to paragraph 69 of the Settlement is fair, adequate, and in the best interest of Class Members, the Court should approve it. The amendment to paragraph 69 is largely a technical clarification to the Class definition. As noted, the Settlement itself and the notices always made clear that the Settlement Class includes "all '13-'18 Altimas manufactured with halogen headlamps," and excluded only those vehicles that were manufactured with Xenon or LED headlamps. While the amendment to paragraph 69 of the Settlement results in additional notices to be sent and a narrower exclusion list, it does not change the Class definition in any fundamental way.

Courts often exercise discretion in modifying settlement class definitions, particularly where necessary to clarify an ambiguity or correct a technical issue. In *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,* 268 F. Supp. 2d 907, 918 n.17 (N.D. Ohio 2003), for example, following the court's orders giving final approval to the settlement agreement, the parties offered several "mutually-agreed-upon amendments" to the settlement agreement. Because the "amendments were either minor and technical in nature, or were made for the purpose of improving the benefits given to the Plaintiff Class," the court granted the motions to amend, "typically noting that it had 'earlier concluded that the Settlement Agreement was fair, adequate, non-collusive, and reasonable, and meets the requirements of Fed. R. Civ. P. 23(e)'" and the "proposed amendment does not materially alter the Settlement Agreement, and does not change the Court's fairness analysis, except possibly to increase the adequacy, fairness, and reasonableness of the Agreement by enhancing the overall value of the settlement to the Class." *Id. See also, e.g., Eiji Kurihara v. Best Buy Co.*, 2009 U.S. Dist. LEXIS 141014, at *19 (N.D. Cal. Oct. 14, 2009) (granting stipulation of the parties filed after preliminary approval but prior

to the final approval hearing to clarify the settlement agreement to address an objection raised by a class member regarding the scope of the release); *Palombaro v. Emery Fed. Credit Union*, 2018 U.S. Dist. LEXIS 165970, at *5-6 (S.D. Ohio Sept. 27, 2018) (granting approval of settlement agreement which modified the certified class definition where "the parties became aware of a technical aspect of the class definition that required clerical modification to avoid potential ambiguities"); *Dewhurst v. Century Aluminum Co.*, 2017 U.S. Dist. LEXIS 77877, at *13 (S.D. W. Va. May 23, 2017) ("The court, in its discretion, finds that the modification of the class definition from the one contained in the class certification order is appropriate in order to facilitate the settlement between the parties and include additional persons affected by defendants' [conduct]"); *Allen v. Similasan Corp.*, 2017 U.S. Dist. LEXIS 56333, at *8 (S.D. Cal. Apr. 12, 2017) (certifying proposed settlement class which expanded the previously certified class, finding "[t]he new class is more numerous than the originally certified one and the representation is equally as adequate").

Accordingly, the parties respectfully request the Court exercise its discretion here to approve the amendment correcting the Settlement Class definition. Submitted herewith as Exhibit E is a revised Proposed Final Order and Judgment reflecting the correction to the Class definition.

### III. CONCLUSION

For the foregoing reasons, the parties respectfully request the Court grant final approval of the Settlement, approve withdrawal of the Whitaker objection, and enter the Proposed Final Order and Judgment submitted herewith.

15
Case 3:21-cv-00393    Document 38    Filed 12/06/21    Page 15 of 17 PageID #: 581

DATED: December 6, 2021                    Respectfully submitted,

*/s/ Timothy N. Mathews*
Timothy N. Mathews (*pro hac vice*)
Samantha E. Holbrook (*pro hac vice*)
Alex M. Kashurba (*pro hac vice*)
Zachary P. Beatty (*pro hac vice*)
CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
tnm@chimicles.com
zpb@chimicles.com

*Lead Class Counsel*

John Spragens (TN Bar No. 31445)
SPRAGENS LAW PLC
311 22nd Ave. N.
Nashville, TN 37203
Telephone: (615) 983-8900
john@spragenslaw.com

*Additional Class Counsel*

16

# CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I electronically filed the foregoing PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ENTRY OF FINAL ORDER AND JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

>Brigid M. Carpenter (TN Bar No. 18134)
>Paul T. Madden (BPR #037588)
>**BAKER, DONELSON, BEARMAN,**
>  **CALDWELL BERKOWITZ, PC**
>1600 West End Avenue
>Suite 2000
>Nashville, TN 37203
>Phone: (615) 726-7341
>bcarpenter@bakerdonelson.com
>pmadden@bakerdonelson.com
>
>*Counsel for Defendant Nissan of North America, Inc.*

>*/s/ Timothy N. Mathews*
>Timothy N. Mathews
>
>*Attorney for Plaintiffs*